**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THADDEUS J. BERDZIK,

                  Plaintiff,

    v.

PHYSICIANS ENDOSCOPY, LLC,
PHYSICIANS ENDOSCOPY HOLDINGS,
LLC, PHYSICIANS ENDOSCOPY
INTERMEDIATE HOLDCO, INC.,
BRANDON GITTELMAN, CHRISTINA
MORRISON, ABC CORPORATIONS 1-5
(fictitious names describing presently
unidentified business entities) and JOHN
DOES 1-5 (fictitious names describing
presently unidentified individuals),

                  Defendants.

Civ. Action No. 20-11656 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

      Plaintiff Thaddeus J. Berdzik ("Plaintiff") brings this suit against his former employer, Physicians Endoscopy, LLC ("Defendant PE"), and related entities Physicians Endoscopy Holdings, LLC ("Defendant PE Holding") and Physicians Endoscopy Intermediate Holdco, Inc. ("Defendant PE Holdco") (collectively, "Corporate Defendants"), individual employees of Corporate Defendants, Brandon Gittelman ("Defendant Gittelman") and Christina Morrison ("Defendant Morrison") (collectively, "Individual Defendants"), as well as ABC Corporations 1-5 and John Does 1-5 (collectively, "Defendants"). Plaintiff alleges that Defendants retaliated against him when he raised objections related to his compensation and when he took medical leave. The First Amended Complaint ("FAC") asserts violations of the New Jersey Conscientious Employee Protection Act

("CEPA"), N.J.S.A. 34:19-1 *et. seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, as well as wrongful discharge in violation of public policy. In the present motion, Defendants move to dismiss those claims.

For the reasons set forth below, Defendants' motion is **GRANTED**. Plaintiff's FAC is dismissed without prejudice, and Plaintiff is given leave to amend his FAC, within 30 days of the Order accompanying this Opinion. Plaintiff may amend his FAC in the following manner, only: 1) in the context of his CEPA claim, to identify a policy he reasonably believed Defendants to have violated, if such a policy exists; and 2) to replead his claims pursuant to the NJLAD, consistent with the dictates of this Opinion.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's FAC and assumed as true for the purposes of this motion.

Plaintiff is—and, at all times relevant to this lawsuit, has been—a resident of Mercer County, New Jersey, and was employed by Corporate Defendants. FAC, ECF No. 12 ¶1. Before joining Corporate Defendants, Plaintiff spent approximately twenty years working for investment companies in trading, research, and investment banking. *Id.* ¶15. Plaintiff has a B.A. from the University of Pennsylvania and an M.B.A. from Rutgers University. *Id.* ¶16. Plaintiff also earned a Chartered Financial Analysis (CFA) designation in 2007. *Id.*

Defendant PE is a Delaware Limited Liability Company with its principal place of business in Pennsylvania. *Id.* ¶2. Defendants PE Holding and PE Holdco are also registered in Delaware. *Id.* ¶¶3-4. Defendants Gittelman and Morrison were, at all times relevant hereto, employed by Corporate Defendants as Director of Financial Planning and Analysis, and Chief Financial Officer, respectively. *Id.* ¶¶6-7. Corporate Defendants are a "management and development company of

freestanding endoscopy surgery centers" that partner "with GI physicians to positively impact single-specialty ambulatory centers' bottom line." *Id.* ¶11.

Plaintiff began working for Corporate Defendants in January 2018. *Id.* ¶17. From the outset of his employment, Corporate Defendants encouraged Plaintiff to work from his home in New Jersey. *Id.* ¶19. Plaintiff was initially hired as a Senior Financial Analyst[1] at a level of compensation that was, Plaintiff maintains, among the lowest in his twenty-year career. *Id.* ¶¶31-32. His responsibilities included analyzing the performance of partnered centers to identify opportunities for growth and cost reduction. *Id.* ¶18. During the hiring process, employees of Corporate Defendants told Plaintiff "that active and rapid promotion was available for high-level performers; that [he was hired for] a new position and an attempt by the company to start analyzing the performance of partnered surgical centers; and [that] there was a significant amount of opportunity to materially add to the company's bottom line through analysis, which in turn, would allow Plaintiff to recoup bonuses, raises, and other financial incentives." *Id.* ¶33. Plaintiff based his decision to join Corporate Defendants at a lower base salary in part on these representations, and Plaintiff claims that he otherwise would not have accepted the position. *Id.* ¶34.

In response to Defendants' representations, Plaintiff took on multiple projects, "including analysis of corporate activities, revenue cycle management, and mergers & acquisitions." *Id.* ¶38. As part of one project in April 2018, Plaintiff identified an opportunity to save "several hundred thousand dollars in expenses" at a surgical center, which came to fruition several months after Defendants began implementing Plaintiff's idea. *Id.* ¶¶41-42. Likewise, Plaintiff took over a project

---

[1] The FAC is not entirely clear as to the position for which Defendants initially hired Plaintiff. In one section, Plaintiff alleges that his "initial position . . . was a newly created Senior Financial Analyst position," ECF No. 12 ¶32, whereas another section states that "Plaintiff was employed by Corporate Defendant(s) as Manager of Financial Analytics," *id.* ¶1, but the FAC does not state if—or when— Plaintiff was promoted, or to which position.

to identify "organic growth opportunities" at a stage when none of the ideas generated then were actionable, and after identifying the most promising candidates, Plaintiff presented his proposal, which Defendants Morrison, the COO, and CEO all approved. *Id.* ¶¶43-46.

In October 2019, Plaintiff began reporting to Defendant Gittelman. At this time, according to Plaintiff, he had received "numerous excellent performance reviews," and "senior leadership" had "referred to Plaintiff's work as 'transformative.'" *Id.* ¶¶49-50. During 2019, "Plaintiff prepared [] research, [] presentations, [] marketing pieces . . ., analysis of performance and best practices recommendations" in connection with Defendants' "organic growth initiatives" and "cost saving measures," which purportedly "added several million dollars to Physician's Endoscopy's bottom-line earnings." *Id.* ¶54. Following a performance review in November 2019, Plaintiff "expressed that his performance and impact on Defendant's bottom line was far above his role and requested either a raise or promotion," explaining that "what he was asking for is simply what was promised to him at the outset [*sic*] employment—the opportunity to capitalize on the actual revenue he generated for the company." *Id.* ¶51-52.

In January 2020, Plaintiff presented an overview of his performance, and he reiterated his request for "additional compensation" and "a promotion/change in title." *Id.* ¶56. In response, Plaintiff received "a small cost of living adjustment in 2020," as well as what Plaintiff describes as a "substantial increase in healthcare expenses to the tune of nearly $10,000," which resulted in a net reduction in pay. *Id.* ¶57. Plaintiff complained to Defendant Gittelman, insisting that he would not have taken the position had he known the level of compensation he would receive. *Id.* ¶58-61. Defendant Gittelman apparently did not make any changes in response to Plaintiff's request, and, as part of his response, Defendant Gittelman allegedly stated that "he prefers someone 'more junior' in Plaintiff's role." *Id.* ¶62. At some point thereafter, Plaintiff alleges that Defendants Gittelman and Morrison "instructed Plaintiff to send all new work requests to them for approval," to which Plaintiff

objected. *Id.* ¶¶64-65. Likewise, Plaintiff's work requests were allegedly reduced by more than fifty percent during a one-month period, apparently at the direction of Defendants Gittelman and Morrison. *Id.* ¶67. Around the same time, Corporate Defendants' workload increased, and they hired additional staff and consultants to meet the new demand. *Id.* ¶¶68-69. Defendant Gittelman also endorsed an employee with less experience than Plaintiff for a "Senior Financial Analysis position" that had opened recently. *Id.* ¶69.

In March 2020, Plaintiff underwent "emergency surgery for abdominal hernia repair and a bowel obstruction." *Id.* ¶74. During the surgery, doctors discovered "a foreign object," which required them to remove and reattach Plaintiff's intestinal tract, and sew his abdomen back together, leaving a twelve-inch scar. *Id.* ¶75. Upon his return to work a week later, Plaintiff had a "surgical drain and staples at the incision site." *Id.* ¶77.

During his first conversation with Plaintiff upon returning to work, Defendant Gittelman informed Plaintiff that his salary was reduced by fifteen percent. *Id.* ¶78. In response to Plaintiff's objections, Defendant Gittelman directed Plaintiff to the human resources department, which Plaintiff alleges to have "been in shambles." *Id.* ¶¶80-81. Plaintiff alleges that he believes he was being punished for taking "a medical/disability leave." *Id.* ¶79. At around the same time, Corporate Defendants closed their offices in response to the COVID-19 pandemic, and thereafter Defendants allegedly assigned Plaintiff "almost no work." *Id.* ¶¶89-90. Plaintiff complained to Defendant Gittelman, who "refused to communicate at all with Plaintiff" during this period. *Id.* ¶¶91-92.

On June 1, 2020, Defendant Gittelman called Plaintiff and terminated his employment, explaining that "the 'position would not be continued.'" *Id.* ¶99. Plaintiff maintains that the reason Defendant Gittelman provided for his termination was "false and pre-textual," as there was no economic rationale for firing Plaintiff due to his qualifications and high performance. *Id.* ¶¶100-102. Plaintiff also notes that, "immediately after Plaintiff's termination, Defendants advertised a

new position for an 'accounting manager.'" *Id.* ¶103. Plaintiff contends that "[t]he accounting manager posting shows Defendants could have certainly found a landing spot for Plaintiff if [they] chose to do so." *Id.*

Plaintiff initially filed suit in the Superior Court of New Jersey, Mercer County, on July 22, 2020. ECF No. 1-1. On August 27, 2020, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, based on the diversity of citizenship of the parties. ECF No. 1.[2] Defendants then moved to dismiss Plaintiff's initial Complaint on September 3, 2020, ECF No. 4, and, in response, Plaintiff filed his FAC on November 2, 2020.[3] The FAC contains five Counts: Count One alleges violations of CEPA based on Defendants' alleged retaliation against Plaintiff for objecting to Defendants' failure to promote him or increase his compensation; Counts Two and Three allege violations of the NJLAD for discrimination and retaliation based on Plaintiff's alleged disability;[4] Count Four alleges wrongful discharge in violation of public policy;[5] and Count Five alleges aiding and abetting liability pursuant to the NJLAD. Defendants filed a Motion to Dismiss Plaintiff's FAC

---

[2] As established *supra*, diversity of citizenship exists, as Plaintiff is a resident of New Jersey, Defendants are located in Pennsylvania, and the corporate entities are incorporated in Delaware. Furthermore, although the FAC does not specify an amount of damages, Defendants have adequately established that the amount in controversy exceeds $75,000, ECF No. 1 at 5-9, and Plaintiff has not opposed removal on these grounds.

[3] Defendants moved to dismiss Plaintiff's initial Complaint in part on the grounds that Plaintiff's "state of employment" was Pennsylvania, not New Jersey, thereby precluding Plaintiff from bringing claims under New Jersey state law. ECF No. 4-1. Plaintiff then timely filed his FAC, alleging that Defendants "expressly permitted [and] encouraged [Plaintiff] to work remotely in New Jersey." ECF No. 12 ¶29; *see also* ¶25 (alleging that "it was an express and substantial condition of Plaintiff's employment that he work while in New Jersey"). In their Motion to Dismiss the First Amended Complaint, Defendants have not maintained their "state of employment" objection.

[4] Plaintiff has not alleged any claim under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the New Jersey Family Leave Act, N.J.S.A. 34:11b-1 *et seq.*, is not applicable here.

[5] In his Opposition to Defendants' Motion to Dismiss, Plaintiff withdrew his claim under Count Four. ECF No. 18 at 7, n.2. Accordingly, Count Four is dismissed with prejudice.

on November 30, 2020, seeking to dismiss all five Counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 13 and 14. Plaintiff filed his Opposition on December 18, 2020, and Defendants filed their Reply on December 28, 2020. ECF Nos. 18 and 19.

## II.     LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)6 does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, the court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

### A.   Count One: CEPA Claim

Plaintiff's claim under CEPA alleges, in effect, that Defendants retaliated against him when he raised complaints related to his level of compensation and rate of advancement. Plaintiff allegedly believed that Defendants' actions violated an unspecified law or constituted fraud. The FAC appears to allege claims under multiple provisions of CEPA, which I address independently, *infra*. For the reasons which follow, I dismiss Plaintiff's CEPA claim with respect to all Defendants.

#### 1.   Legal Standard

CEPA "creates a cause of action for an employee who is subjected to retaliation for reporting workplace misconduct." *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 555 (2013) (citing *Dzwonar v. McDevitt*, 177 N.J. 451, 461-62 (2003)). The Supreme Court of New Jersey has emphasized that "CEPA is a remedial statute that 'promotes a strong public policy of the State' and 'therefore should be construed liberally to effectuate its important social goal.'" *Id.* (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994)).

As relevant here, CEPA prohibits employers from taking "any retaliatory action against an employee because the employee does any of the following:"

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any . . . employee . . . of the employer . . .; or
(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any . . . employee . . . of the employer
. . .
c. Objects to, or refuses to participate in any activity, policy or practice which the employee

reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any . . . employee . . . of the employer . . .; or
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any . . . employee . . . of the employer . . .; or
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3(a) and (c).

To state a claim for a violation of CEPA, the plaintiff has the burden to establish that "(1) he or she reasonably believed that his or her employer's conduct violat[ed] either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Chiofalo v. State*, 238 N.J. 527, 541 (2019) (quoting *Dzwonar*, 177 N.J. at 462); *Lindenberg v. Arrayit Corp.*, Civ. No. 14-833, 2016 WL 659724, at *3 (D.N.J. Feb. 18, 2016) (citing *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999)) (applying the same test to N.J.S.A. 34:19-3(a)).

The first prong of a CEPA claim contains an "identification requirement." *Chiofalo*, 238 N.J. at 541-42. With respect to claims brought pursuant to N.J.S.A. 34:19-3(a)(1), (c)(1), and (c)(3), "either 'the court or the plaintiff' must identify the statute, regulation, rule, or public policy that closely relates to the complained-of conduct." *Id.* (quoting *Dzwonar*, 177 N.J. at 464); *Cuff v. Camden City Sch. Dist.*, Civ. No. 18-13122, 2019 WL 1950400, at *5 (D.N.J. May 2, 2019), *aff'd*, 790 Fed. App'x 413 (3d Cir. 2019). A plaintiff "need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy," as "[t]he goal of CEPA . . . is 'not to make lawyers out of conscientious employees.'" *Dzwonar*, 177 N.J. at 463-64 (quoting *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 193-94 (1998)). Nevertheless, a plaintiff must "set forth

facts that would support an objectively reasonable belief that a violation has occurred." *Id.* at 464. "[T]he trial court must [then] make a threshold determination that there is a substantial nexus between the complained-of conduct and [the] law or public policy [that the plaintiff or the court] identified." *Id.* "'[W]hen no such law or policy is forthcoming,' judgment can and should be entered for the defendant." *Chiofalo*, 238 N.J. at 541-42.

A similar requirement applies to claims brought under N.J.S.A. 34:19-3(a)(2) and (c)(2), which focus on "fraudulent or criminal" activities. In *Chiofalo*, the court recognized that no previous decision had "mention[ed] any . . . obligation to identify some legal source rendering activity fraudulent." *Id.* at 544. "'[C]riminal' or 'fraudulent' activity," the court explained, "is often apparent and commonly recognizable," which "distinguishes claims [under Sections (a)(2) and (c)(2)] from CEPA's references in sections (c)(1) and (3) to violations of a more general 'law, or a rule or regulation promulgated pursuant to law' or of 'a clear mandate of public policy.'" *Id.* Nevertheless, the court concluded that "the better practice in CEPA actions brought under (c)(2)[] or . . . (a)(2)[] surely is to identify the statutory or other basis for claiming objected-to behavior is criminal or fraudulent." *Id.* Although the court does "not expect whistleblower employees to be lawyers on the spot[,] once engaged in the legal process, and with the assistance of counsel or careful examination by the court, . . . the legal underpinnings for claimed behavior that is perceived as criminal or fraudulent should be able to be teased out sufficiently for identification purposes." *Id.* at 544-45. In that regard, the court cautioned "that trial courts 'must be alert to the sufficiency of the factual evidence'"—allegations at this stage—"'and to whether the acts complained of could support the finding that the complaining employee's belief was a reasonable one.'" *Id.* at 543-44 (quoting *Battaglia*, 214 N.J. at 558). Even where the relevant conduct appears to be criminal or fraudulent on its face, "if a defendant questions the source of law relied on by the plaintiff, that source should be provided by the plaintiff." *Id.* at 545.

### 2.    Analysis

Here, because Plaintiff appears to raise claims under Sections (a)(1) and (c)(1), (a)(2) and (c)(2), and (c)(3), I will address Plaintiff's claims under each of these provisions, or pairs of provisions, separately. With respect to each set of provisions, Plaintiff has failed to satisfy the first element of a CEPA claim—namely, his reasonable belief that Defendants' actions violated a law or public policy, or that they were criminal or fraudulent. Therefore, the Motion to Dismiss Count One is granted as to all Defendants.

### a)    N.J.S.A. 34:19-3(a)(1) and (c)(1)

Plaintiff's claim pursuant to N.J.S.A. 34:19-3(a)(1) and (c)(1) fails because he has not "identif[ied] [any] statute, regulation, [or] rule . . . that closely relates to the complained-of conduct." *Chiofalo*, 238 N.J. at 541. Plaintiff did not do so in his FAC. Even after Defendants raised this objection in their Motion to Dismiss, Plaintiff still did not identify in his Opposition any "law, or a rule or regulation promulgated pursuant to law," N.J.S.A. 34:19-3(a)(1), (c)(1), that he believed Defendants' conduct to have violated. Plaintiff vaguely alleges that "he objected to conduct he reasonably believed to be fraudulent, deceptive, illicit, and unlawful." ECF No. 18 at 22; ECF No. 12 ¶118. Yet, tellingly, Plaintiff has not identified any statute or rule "that closely relates to" such conduct. *Chiofalo*, 238 N.J. at 541. Furthermore, other than a tangential connection to common law fraud, which I address *infra*, I am unable to identify any "law, or a rule or regulation promulgated pursuant to law," that Plaintiff reasonably could have believed Defendants violated in these circumstances. Because "'no such law . . . is forthcoming,'" Plaintiff's claim under Sections (a)(1) and (c)(1) is dismissed. *Chiofalo*, 238 N.J. at 541-42 (quoting *Dzwonar*, 177 N.J. at 463).

### b)    N.J.S.A. 34:19-3(a)(2) and (c)(2)

Plaintiff's claim pursuant to Sections (a)(2) and (c)(2), which rests on allegedly fraudulent

conduct,[6] similarly fails to satisfy CEPA's identification requirement. Although *Chiofalo* recognized that no prior case had imposed an identification requirement under Sections (a)(2) and (c)(2), the court concluded that, "once engaged in the legal process, and with the assistance of counsel or careful examination by the court, . . . the legal underpinnings for claimed behavior that is perceived as . . . fraudulent should be able to be teased out sufficiently for identification purposes." 277 N.J. at 543-45. Here, Plaintiff has engaged counsel, filed a Complaint and a First Amended Complaint, and responded to Defendants' Motion to Dismiss. Yet, despite Defendants' argument in their Motion to Dismiss that Plaintiff had failed to identify any specific law or policy he believed Defendants had violated, Plaintiff does not refer to any statutory or common law, or rule or policy, in his Opposition. *See id* at 545 (noting that "if a defendant questions the source of law relied on by the plaintiff, that source should be provided by the plaintiff").

Furthermore, although the Court can identify common law fraud as conceivably relevant to Plaintiff's claim, ECF No. 12 ¶118 (asserting belief that Defendants' actions were "fraudulent [or] deceitful"), Plaintiff has not plausibly alleged a reasonable belief that Defendants committed fraud. Plaintiff need not establish that Defendants "actually violated the law," and ultimately a jury "must determine whether the plaintiff actually held such a belief and . . . whether [it was] . . . reasonable." *Dzwonar*, 177 N.J. at 462, 464. However, Plaintiff must "set forth facts that would support an objectively reasonable belief that a violation has occurred," such "that there is a substantial nexus between the complained-of conduct" and the law at issue. *Id.* at 464; *Chiofalo*, 277 N.J. at 544 ("[T]he relevant law or basis should be identified with enough specificity to allow the court to connect the facts to the reasonableness of the perception."). Indeed, to state a claim for fraud in New Jersey, a

---

[6] Neither Plaintiff's FAC nor his Opposition brief refer explicitly—or allude—to conduct that could qualify as "criminal" under Sections (a)(2) and (c)(2).

plaintiff must allege facts demonstrating, *inter alia*, "(1) a material misrepresentation of a presently existing or past fact[,] [and] (2) knowledge or belief by the defendant of its falsity." *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 117 A.3d 1221, 1231 (2015).

Here, Defendants told Plaintiff when he was hired that "active and rapid promotion was available for high performers" and that "there was a significant amount of opportunity to materially add to the company's bottom line through analysis, which in turn, would allow Plaintiff to recoup bonuses, raises, and other financial incentives." ECF No. 12 ¶33. Plaintiff alleges that, because he did not receive a bonus or promotion, he "believed he had been completely duped into taking the position" and that, "had he known about Defendants' true intentions, he never would have taken the position." *Id.* ¶¶58-59. However, these "conclusory statements" are not sufficient to support a reasonable belief that Defendants committed fraud. *Iqbal*, 556 U.S. at 678. Plaintiff does not plead any facts supporting his belief that Defendants' representations during Plaintiff's hiring process were false or misleading, or that Defendants intended to mislead him. *See Hitesman v. Bridgeway*, 430 N.J. Super. 198, 215 (App. Div. 2013) (in ascertaining "whether the plaintiff possessed an objectively reasonable belief[,] . . . the required 'close relationship' between a claim and the authority identified cannot exist when an element necessary to a claim under that authority is not present."). Accordingly, Plaintiff has not stated a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.

### c)      N.J.S.A. 34:19-3(c)(3)

To the extent that Plaintiff asserts a claim pursuant to Section (c)(3), that claim also fails to satisfy CEPA's identification requirement. Similar to his claim pursuant to Sections (a)(1) and (c)(1), Plaintiff's claim under Section (c)(3) fails because he has not identified a "specific public policy which he reasonably believes [Defendants] violated." *Parson v. Home Depot USA, Inc.*, Civ. No. 13–4817, 2014 WL 820066, at *3 (D.N.J. March 3, 2014) (citing *Hitesman*, 430 N.J. Super. at 213). Indeed, Plaintiff appears to concede in his Opposition that he is unable to identify any "clear mandate

of public policy" that Defendants' conduct violated. ECF No. 18 at 21 (noting "Plaintiff's CEPA claim is brought under . . . subsections (a)(1) and (2) and (c)(1) and (2), [] *not simply* under subsection (c)(3)," and that while claims "under subsection (c)(3) require the plaintiff to identify" a relevant public policy, "claims under subsections (a)(1) or (c)(1)" do not) (emphasis in original).

Even assuming Plaintiff has invoked a public policy against "fraudulent [or] deceptive" conduct, ECF No. 18 at 22, in these circumstances, that is not sufficient to establish a claim under CEPA. "[T]he identified policy 'must have public ramifications, [and] . . . the dispute between [an] employer and employee must be more than a private disagreement." *Parson*, 2014 WL 820066, at *3 (quoting *Maw v. Advanced Clinical Commc'ns, Inc.*, 179 N.J. 439, 445 (2004)). In *Maw*, the court addressed a CEPA claim in which the plaintiff argued that her employer terminated her in retaliation for her refusal to sign a non-compete agreement, which she alleged to have violated public policy. 179 N.J. at 443. The court rejected the plaintiff's claim because her "dispute with her employer is private in nature." *Id.* at 445. In reaching that conclusion, the court emphasized that the plaintiff's dispute only concerned the impact that the non-compete agreement would have on *her. Id.* ("It is telling that plaintiff uniformly refers to the effect that signing the noncompete agreement would have on '*her* ability to find employment in *her* field[.]'") (emphasis in original). Similarly, here, Plaintiff's objections to Defendants' actions were entirely private in nature, as they only involved the impact of Defendants' conduct on Plaintiff's compensation and employment. *See, e.g.*, ECF No. 12 ¶52 ("Plaintiff explained that what *he* was asking for is simply what was promised to *him* at the outset employment"); ¶58 ("Plaintiff immediately objected to Defendant Gittelman, stating *his* compensation was completely contrary to what *he* was told at the time of hiring."). Moreover, a court within this district has explicitly rejected a CEPA claim premised on an employer's "breach [of] its promise to maintain [the plaintiff's] compensation" at a certain level, "whether labeled fraud or otherwise." *Broad v. Home Depot U.S.A., Inc.*, 2016 WL 3566959, at *8 (D.N.J. June 30, 2016). In

short, Plaintiff's disagreement with Defendants over his level of compensation and rate of advancement does not provide the basis for a claim under CEPA.[7]

For the foregoing reasons, Plaintiff's claims against Defendants pursuant to CEPA are dismissed.

### B.      Counts Two, Three, and Five: NJLAD Claims

Plaintiff has alleged claims pursuant to the NJLAD for discriminatory discharge and failure to accommodate (Count Two), discriminatory retaliation (Count Three), and aiding and abetting liability (Count Five).[8] Because each of Plaintiff's claims pursuant to the NJLAD requires him to adequately allege a disability, which I conclude he has failed to do here, I grant Defendants' motion to dismiss Counts Two, Three, and Five.

### 1.      Legal Standard

The Supreme Court of New Jersey has explained that "the elements of [a] prima facie case [under the NJLAD] vary depending upon the particular cause of action." *Victor v. State*, 203 N.J. 383, 408 (2010). To state a claim for discriminatory discharge based on a disability, the plaintiff must allege that: "(1) [he] is in a protected class; (2) [he] was otherwise qualified and performing the essential functions of the job; (3) [he] was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job." *Id.* (citing *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 596-97 (1988)). To state a claim for failure to accommodate, the plaintiff must allege that: "(1) [he] was disabled and his employer knew it; (2) [he] requested an accommodation or assistance; (3) [his]

---

[7] Unless Plaintiff is able to identify—in an amended complaint—a "specific public policy which he reasonably believes [Defendants] violated," *Parson*, 2014 WL 820066, at *3, I will dismiss his CEPA claim with prejudice.

[8] To the extent that Plaintiff brings claims for individual liability under the NJLAD, he only asserts individual liability against Defendant Gittelman. ECF No. 18 at 36, n.12.

employer did not make a good faith effort to assist; and (4) [he] could have been reasonably accommodated." *Matteo v. Bumble Bee Foods, LLC*, Civ. No. 14-435, 2014 WL 4094281, at \*3 (D.N.J. Aug. 18, 2014). To state a claim for retaliation, "[the] plaintiff [must allege] that: (1) [he] was in a protected class; (2) [he] engaged in protected activity known to the employer; (3) [he] was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." *Victor*, 203 N.J. at 409. Finally, "[t]o establish aiding and abetting liability, a plaintiff must show that: (1) the defendant aided a party who performed a wrongful act that caused an injury; (2) the defendant was 'generally aware of his role as part of an overall illegal or tortious activity at the time he provided assistance;' and (3) defendant knowingly and substantially assisted the principle violation." *Amentler v. 69 Main Street, LLC*, Civ. No. 08-351, 2012 WL 28194, at \*13 (D.N.J. Jan. 3, 2012) (citing *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004)).

For any of these causes of action, if the plaintiff satisfies the *prima facie* elements, "[t]he burden then shifts to the employer to prove a legitimate, non-discriminatory reason for the employment action." *Gerety v. Atlantic City Hilton Casino Resort*, 184 N.J. 391, 399 (2005). The plaintiff may then rebut the employer's contention with proof that "the employer's proffered reason was merely pretext for the discrimination." *Id.*

Here, each of Plaintiff's claims under the NJLAD is premised on his alleged disability and Defendants' actions following Plaintiff's surgery, during which doctors repaired an abdominal hernia and removed an object from his intestinal tract. *See* ECF No. 12 ¶126 (noting under Count Two that "[t]he conduct of Defendants as detailed above constitutes disability discrimination"); ECF No. 18 at 32-33 (noting with respect to Count Three that Plaintiff's "NJLAD retaliation claim regarding Plaintiff's disability and subsequent wage loss and demotion is distinct from the CEPA retaliation claim" and that "Plaintiff has a separate claim alleging disability discrimination and retaliation");

ECF No. 18 at 35 (noting with respect to his NJLAD aiding and abetting claim in Count Five that "Plaintiff alleges that immediately upon his return to work from a leave of absence due to his disability, Defendant Gittelman discriminated and retaliated against Plaintiff"). Thus, to be in a "protected class" for purposes of any of his NJLAD claims, Plaintiff must "demonstrate that he . . . qualifies as an individual with a disability, or who is perceived as having a disability, as that has been defined by statute." *Victor*, 4 A.3d at 142.[9]

> The NJLAD defines a disability as:
>
> physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impairment, or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological, or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological, or neurological conditions which prevents the typical exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.

N.J.S.A. 10:5-5(q). Within this definition, "there are two specific categories of handicap: physical and non-physical." *Nguyen v. Wal-Mart*, Civ. No. 12-01824, 2013 WL 3222498, at *6 (D.N.J. Jun. 25, 2013). Here, Plaintiff's allegations are relevant only to an alleged physical disability related to his hernia and subsequent surgery. ECF No. 18 at 26-27; ECF No. 12 ¶¶74-77.[10]

"To meet the physical standard, a plaintiff must [allege] that he or she is (1) suffering from physical disability, infirmity, malformation or disfigurement; (2) which is caused by bodily injury, birth defect or illness including epilepsy." *Id.* The "[NJ]LAD is not restricted to 'severe' or

---

[9] Because Plaintiff's aiding and abetting claim is derivative of his claims for discriminatory discharge, failure to accommodate, and retaliation under the NJLAD, he must sufficiently allege a disability for purposes of his aiding and abetting claim, as well.

[10] None of Plaintiff's allegations in the FAC suggest that he seeks to establish a perceived disability, and he does not advance such an argument in his Opposition.

'immutable' disabilities," *Viscik v. Fowler Equipment, Inc.*, 173 N.J. 1, 16 (2002), and the statute "'clearly encompasses . . . disabled people who do not have a substantial or permanent impairment at the time of the alleged discrimination.'" *Spagnoli v. Brown & Brown Metro, Inc.*, Civ. No. 06-414, 2007 WL 2362602, at *9 (D.N.J. Aug. 15, 2007) (quoting *Soules v. Mount Holiness Mem'l Park*, 354 N.J. Super. 569, 575 (App. Div.2002)). However, "[w]here the existence of a handicap is not readily apparent, expert medical evidence is required." *Viscik*, 800 A.2d at 835. Importantly, the statute does not protect "condition[s] of limited duration" that amount to merely a "temporary emergency situation." *Spagnoli*, 2007 WL 2362602, at *9.

### 2.      Plaintiff Fails to Allege a Disability

For the reasons which follow, I conclude that Plaintiff has failed to adequately allege a disability under the NJLAD.

Defendants argue that Plaintiff has failed to identify his alleged disability and that, "[a]t most, Plaintiff merely suffered from a 'temporary emergency situation.'" ECF No. 14 at 21; ECF No. 19 at 16-18. In that regard, Defendants rely on *Spagnoli*, in which the court concluded, on a motion for summary judgment, that the plaintiff's pulmonary embolism, followed by six weeks of medical leave, was not a disability because there was no evidence the plaintiff had anything more than a "condition of limited duration" or that the plaintiff "was limited . . . in any manner following her complete recovery." 2007 WL 2362602, at *9. The plaintiff had "not provided any medical evidence" indicating "that a pulmonary embolism is of such an enduring character that its effects make it a disability." *Id.* Thus, the plaintiff had only established that she endured a "temporary emergency situation," which is not sufficient to establish a disability under the NJLAD. *Id.*; *see also Photis v. Sears Holding Corp.*, Civ. No. 11-6799, 2013 WL 3872519, at *6 (D.N.J. July 25, 2013) (holding on motion for summary judgment that plaintiff's seizure did not qualify as a disability because plaintiff was never diagnosed and his seizures did not continue, suggesting plaintiff merely had "a condition

of limited duration" that qualified as a "temporary emergency situation"). Defendants also cite to *Riconda*, which held on a motion to dismiss that the plaintiff's "stomach virus, resulting in a work absence of 2 1/2 to 3 days," did not qualify as a "disability" because the plaintiff's illness was "a garden-variety ailment that was not merely temporary but truly transient." 2019 WL 4254389, at *3, n.3.

Plaintiff responds that he has sufficiently alleged a disability. He alleges that he had emergency surgery to repair an abdominal hernia during which doctors discovered a foreign object, requiring additional surgery to remove and replace Plaintiff's intestinal tract. ECF No. 18 at 26-27; ECF No. 12 ¶¶74-77. He also notes that, when he returned to work following his surgery, he had a surgical drain and staples at the incision site. *Id.* To support his claim, Plaintiff cites primarily to *Soules*. ECF No. 18 at 27-28. There, the plaintiff "developed cancer requiring the removal of a kidney," which caused him to miss eight months of work. *Soules*, 808 A.2d at 864. The trial court granted summary judgment to the defendants, concluding that the plaintiff's "temporary inability to work while recuperating from surgery" was not sufficient to establish a disability under the NJLAD. *Id.* at 865. In reversing, the Appellate Division rejected the trial court's focus on the "plaintiff's eight-month recuperative period" and, instead, concluded that "there can be little question that cancer qualifies as a handicap under LAD." *Id.* at 867.

Here, Plaintiff has failed to sufficiently allege a disability as defined in the NJLAD. Plaintiff has alleged that he underwent surgery to repair an abdominal hernia and remove a foreign object from his intestinal tract, and that he had "a surgical drain and staples at the incision site" upon his return to work a week later. ECF No. 12 ¶¶74-75. Plaintiff does not allege that any of these medical emergencies impacted his ability to work when he returned following his surgery. Based on these allegations alone, "the existence of a handicap is not readily apparent," and Plaintiff has not made any allegations supporting his claim that these conditions qualify as a disability. *Viscik*, 173 N.J. at

16. Plaintiff has not cited to any case law, medical sources, or any other authorities to support the proposition that any of the conditions he alleges amount to a disability under the NJLAD. He simply requests the Court to accept at face value that these conditions qualify as a disability, which is not sufficient to state a claim. *Id.*; *Photis*, 2013 WL 3872519, at *9 (dismissing claim in part because "Plaintiff has not provided the Court with any expert medical evidence to establish the existence of a disability").[11]

Moreover, Plaintiff has not alleged that his "medical condition was anything but a condition of limited duration or that [he] was limited by h[is] medical condition in any manner following h[is] complete recovery." *Spagnoli*, 2007 WL 2362602, at *9; *see also Photis*, 2013 WL 3872519, at *6 (concluding that the plaintiff had not "shown that he is disabled" in part because "there is no evidence which indicates that Plaintiff's medical condition was anything more than a condition of limited duration or a temporary emergency situation") (internal quotation marks omitted). Significantly, Plaintiff did not seek an accommodation following his return from surgery. To the contrary, the FAC emphasizes "Plaintiff's capacity and ample time to work from home" upon his return from surgery and that Plaintiff "repeatedly complained . . . about the lack of work" assigned to him during that period. ECF No. 12 ¶91. Accordingly, Plaintiff has failed to state a *prima facie* case of disability in the FAC.

The Court is aware that *Spagnoli* and *Photis* were decided on motions for summary judgment

---

[11] The parties have not presented any case law analyzing whether an abdominal hernia or intestinal obstruction requiring surgery qualify as disabilities under the NJLAD, and the Court is not aware of any. Nevertheless, the Court notes that a federal district court has concluded that a hernia and gallstones, which required surgical intervention, did not constitute a disability under the Americans with Disabilities Act (ADA). *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F. Supp. 2d 488, 500 (M.D. La. 2003). Although "[t]he term 'handicapped' in LAD is . . . significantly broader than the analogous provision of the . . . ADA," *Viscik*, 173 N.J. at 16, *Guerin* further supports my conclusion that I may not infer, based solely on the fact that Plaintiff underwent surgery to repair a hernia, that Plaintiff was disabled.

following a period of discovery, whereas, here, Defendants have moved to dismiss the claims pursuant to Rule 12(b)(6), without any discovery. Nevertheless, to survive a motion to dismiss, Plaintiff must still state a claim that "is plausible on its face." *Twombly*, 550 U.S. at 570. Here, Plaintiff has simply alleged that he had a disability because he underwent surgery to repair an abdominal hernia and remove an object from his intestinal tract. ECF No. 12 ¶¶74-75. Without any other allegations that these conditions amounted to a disability, *Viscik*, 173 N.J. at 16, such "conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Plaintiff's citation to *Soules* on this point is unpersuasive. *Soules* turned primarily on the Supreme Court of New Jersey's holding that the NJLAD covers "disabled people who do not have a substantial or permanent impairment at the time of the alleged discrimination." 354 N.J. Super. at 575 (citing *Anderson*, 89 N.J. at 495). In concluding that the plaintiff failed to allege a disability, the trial court in *Soules* had focused on "the length of [the plaintiff's] recuperative period [and] the temporal consequences of his cancer." *Id.* The Appellate Division concluded that the trial court erred because "there can be little question that cancer qualifies as a handicap under LAD." *Id.* at 576. In other words, the court could infer that the plaintiff suffered from a disability based on his cancer diagnosis alone, as supported by preexisting case law establishing that various forms of cancer qualified as disabilities. *See id.* (citing cases). Here, Plaintiff has not set forth any allegations or case law providing a basis upon which the Court may infer, based solely on the fact that Plaintiff underwent surgery to repair a hernia, that Plaintiff was disabled. Indeed, Plaintiff's allegations are to the contrary, since he alleges an ability and desire to work following his surgery.

Because I conclude that Plaintiff has failed to sufficiently allege a disability, Plaintiff's claims

under the NJLAD in Count Two for discriminatory discharge[12] and failure to accommodate,[13] Count

Three for retaliation,[14] and Count Five for aiding and abetting liability, are all dismissed.

### 3.    Individual and Aiding/Abetting Liability

If Plaintiff chooses to amend his complaint, he must state explicitly against which defendant

or defendants he asserts each claim under the NJLAD. Plaintiff may not assert a claim against any

Individual Defendant pursuant to N.J.S.A. 10:5-12(a), as that provision does not provide for

individual liability. *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008).[15]

---

[12] Although Defendants moved to dismiss the discriminatory discharge claim only on the basis that Plaintiff has not established a disability, the Court cannot discern any allegations in the record thus far that, after terminating Plaintiff, Defendants "sought similarly qualified individuals for [Plaintiff's] job." *Riconda*, 2019 WL 4254389, at *2. Plaintiff alleges that, upon his termination, Defendant Gittelman stated that the "position [Plaintiff held] would not be continued." ECF No. 12 ¶99. Plaintiff also alleges that, "immediately following [his] termination, Defendants advertised a new position for an 'accounting manager.'" *Id.* ¶103. Plaintiff has not plead any facts to demonstrate that this position was sufficiently similar to Plaintiff's for purposes of a discriminatory discharge claim.

[13] Plaintiff also has not alleged that he "requested an accommodation or assistance," as required to state a claim for failure to accommodate pursuant to the NJLAD. *Matteo*, 2014 WL 4094281, at *3.

[14] Defendants moved to dismiss Plaintiff's NJLAD retaliation claim based on CEPA's waiver provision, which provides that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J.S.A. 34:19-8. In the absence of any controlling Supreme Court precedent, there is some dispute regarding the point at which "a plaintiff must make an election under CEPA's waiver provision." *Rossi v. Vericare Mgmt., Inc.*, Civ. No. 13-6884, 2016 WL 6892075, at *4 (D.N.J. Nov. 22, 2016). However, based on relevant lower-court decisions, this Court concluded in a previous case that a plaintiff may "conduct discovery regarding his claims before he is required to make an election of remedies between his CEPA and LAD claims under the waiver provision." *Id.* I see no reason to depart from that conclusion here. *See Curro v. HD Supply, Inc.*, Civ. No. 19-19198, 2020 WL 3496955, at *6 (D.N.J. June 29, 2020) (applying the same rule as was applied in *Rossi* based on recent case law). Accordingly, Defendants' motion to dismiss Plaintiff's NJLAD retaliation claim against Corporate Defendants based on a CEPA waiver is premature. *Rossi*, 2016 WL 6892075, at *4.

[15] At this stage, I do not resolve whether Plaintiff may bring a retaliation claim against Defendant Gittelman. There appears to be an open question as to whether a plaintiff may assert a claim for retaliation under N.J.S.A. 10:5-12(d) against a supervisor. However, case law within this district has concluded that N.J.S.A. 10:5-12(d) does not provide for individual liability against an employee. *Wicker v. Broomfield Discount, LLC*, Civ. No. 19-19053, 2020 WL 5229388, at *3-4 (D.N.J. Sept.

Furthermore, Plaintiff must specify the defendants against which he asserts a claim for aiding and abetting pursuant to N.J.S.A. 10:5-12(e) and the precise violations each defendant allegedly aided and abetted. Plaintiff may not simultaneously maintain claims against the Corporate Defendants both for violations of N.J.S.A. 10:5-12(a) and (d), and for aiding and abetting such violations under N.J.S.A. 10:5-12(e), as the Corporate Defendants cannot aid and abet their own acts in these circumstances.[16]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the First Amended Complaint is **GRANTED**. Plaintiff's FAC is dismissed without prejudice. Plaintiff is given leave to amend his complaint within 30 days of the Order accompanying this Opinion. Plaintiff may only amend the FAC to 1) identify a policy he reasonably believed Defendants to have violated, in support of his CEPA claim, and 2) re-plead his NJLAD claim, consistent with this Opinion. An appropriate form of Order is filed herewith.


Date: July 30, 2021                              /s/ Freda L. Wolfson
                                                 Hon. Freda L. Wolfson
                                                 U.S. Chief District Judge

---

2, 2020) (denying retaliation claim against employee "because individual liability cannot be imposed for such [a] claim under NJLAD") (citing *Cicchetti*, 194 N.J. at 594 (concluding in case that did not involve a retaliation claim that "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person'")).

[16] Defendants argue that Plaintiff has not stated an NJLAD claim against Defendant Gittelman in part because Count Five only asserts an aiding and abetting claim against the Corporate Defendants. ECF No. 19 at 18-20. However, the Court construes the FAC to assert an aiding and abetting claim against Defendant Gittelman because there are allegations outside of those enumerated in Count Five that Gittelman aided and abetted Corporate Defendants following Plaintiff's surgery. *E.g.*, ECF No. 12 ¶78. Nevertheless, Plaintiff must amend his aiding and abetting claim to clarify the specific defendants against whom the claim is asserted.